**L.D. JAMESON**

v.

**BETHLEHEM STEEL CORPORATION, et al.**

**Civ. A. No. 83–6006.**

United States District Court, E.D. Pennsylvania.

April 7, 1986.

John R. Vintilla, Cleveland, Ohio, Norman A. Oshtry, Philadelphia, Pa., for plaintiff.

Dona S. Kahn, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

HUYETT, District Judge.

Plaintiff Jameson brought this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, against his former employer, Bethlehem Steel Corporation, the Pension Plan of Bethlehem Steel Corporation, the Pension Plan of Bethlehem Steel Corporation and Subsidiary Companies ("Pension Plan"), and the General Pension Board which administers the pension plan. He alleges that defendants violated provisions of ERISA by refusing to credit him with service earned while he was employed by Iron Mines Company of Venezuela ("IMCOV"), a subsidiary of Bethlehem Steel Corporation. Presently pending before me are cross-motions for summary judgment. For the reasons outlined below, I will grant defendants' motion and deny plaintiff's.

The material facts in this case are undisputed. Plaintiff worked for IMCOV from May 5, 1953 to February 28, 1970. When his assignment with IMCOV terminated in 1970, defendant Bethlehem Steel paid him $56,492 in "Cesantia and/or Antiquades" ("C & A"), a form of severance or separation pay provided for under Venezuelan law. On March 1, 1970, plaintiff commenced working for Bethlehem Mines, a subsidiary in Spain.

In 1970, it was defendant Bethlehem's policy that any person who worked in Venezuela and who upon completion of his or her assignment in Venezuela was given the "C & A" payment had to elect either to return the C & A or lose credit, for pension purposes, for their years of service with IMCOV. This policy was reflected in a memorandum dated January 27, 1967 from the Secretary of the General Pension Board

to the Vice President of Bethlehem; the memorandum clearly states that an employee who accepts and does not repay the C & A to the company at the time he is rehired at another Bethlehem operation beings at such other operation as a new employee. This policy existed before 1967, and plaintiff was advised of it in a memorandum dated September 6, 1966. See Defendant's Memorandum, Exhibit 2.

Plaintiff acknowledges that he was aware of Bethlehem's policy with respect to the C & A payments. In February of 1979, plaintiff made arrangements for his resignation from Bethlehem. The final terms of his resignation were encompassed in a written agreement dated March 23, 1979 which in turn incorporated a memorandum dated February 15, 1979. See defendant's memorandum, exhibit 4 and attachment A. The February 15, 1979 memorandum specifically stated that as of his formal resignation and termination on February 29, 1980, plaintiff would have accumulated ten years' continuous service with Bethlehem. Plaintiff signed the March 23, 1979 memorandum, stating his agreement with its terms. Moreover, Bethlehem agreed to continue plaintiff at half his regular salary from March 1, 1979 to February 29, 1980 to give plaintiff ten years' credit and therefore make him eligible for a deferred vested pension.

When plaintiff resigned in 1980, the General Pension Board determined that plaintiff was entitled to a deferred pension, based on ten years of service—from March 1, 1970 to February 29, 1980. Plaintiff claimed that he should also receive credit for the seventeen years he spent in Venezuela, but the General Pension Board, relying on the company policy in effect in 1970, denied credit for that period. Because plaintiff did not refund the C & A, the Pension Board refused to include the Venezuela years in computing his pension benefits. Plaintiff now alleges that the Pension Board's refusal to include the Venezuelan years in its calculation was in violation of ERISA's provision barring forfeitures after

ten years of service. 29 U.S.C. § 1053(a)(2)(A).

Previously, I granted defendant's motion for summary judgment on the issue of jurisdiction under ERISA. The Third Circuit reversed and remanded the case for me for further proceedings. See Jameson v. Bethlehem Steel Corporation, 765 F.2d 49 (3d Cir.1985). The Third Circuit concluded that plaintiff's cause of action arose in 1980 and therefore came within the scope of ERISA's jurisdictional provision. 29 U.S.C. § 1144(b). The court suggested, however, that state law may govern: "[o]nce jurisdiction has attached, the 'act or omission' provision of § 514, does no more than inform the court that ERISA's substantive provisions are not to be used to determine the law at the time of incidents occurring before January 1, 1975." 765 F.2d at 52.

What law governs the issues raised by the cross-motions for summary judgment is the first question for me to resolve. Defendants contend that the Third Circuit decision dictates that state law governs the merits of this suit. Plaintiff, on the other hand, contends that his claim is based entirely on ERISA; he claims that defendants' refusal to credit the plaintiff with the years of service in Venezuela in computing his pension benefits constitutes a violation of the pension plan which is controlling in this case and a violation of section 203(a) of ERISA which prohibits the forfeiture of an employee's rights to his pension once they have vested. Plaintiff also argues that section 402(a)(1) of ERISA, 29 U.S.C. § 1102(a)(1), which provides that every employee benefit plan should be established and maintained pursuant to a written instrument, requires that defendants credit his years in Venezuela.

■ I agree with plaintiff that he has stated a claim arising under ERISA. Therefore, ERISA must be applied to determine whether plaintiff's pension rights were nonforfeitable.[1] However, to the ex-

---

1. Defendants raise a number of defenses under    state law such as equitable estoppel and laches.

tent of acts or policies in effect prior to 1975, the effective date of ERISA, are determinative of the outcome here, ERISA will not govern. I cannot apply the rules and restrictions of ERISA to acts or policies predating ERISA's effective date.

The starting point is to examine which of ERISA's substantive provisions govern plaintiff's claim—a claim based on an employment history prior to January 1, 1975 but filed after that date. Section 203 of ERISA, 29 U.S.C. § 1053 govern the vesting of pensions, and plaintiff relies on subsection (a)(2)(A) in claiming that his pension rights were nonforfeitable.[2] Subsection (b)(1)(F) provides, however, that certain periods of time may not be included in calculating the nonforfeitable percentage under subsection (a)(2):

> (1) In computing the period of service under the plan for purposes of determining the nonforfeitable percentage under subsection (a)(2) of this section, all of an employee's years of service with the employer or employers maintaining the plan shall be taken into account, except that the following may be disregarded:
>
> (F) years of service before this part first applies to the plan if such service would have been disregarded under the rules of the plan with respect to breaks in service, as in effect on the applicable date;

As the Third Circuit, in *Tanzillo v. Local Union 617*, 769 F.2d 140, 145 (3d Cir.1985), recently noted:

> ERISA thus explicitly recognizes break-in-service forfeiture of those credits which had been accrued prior to the effective date of ERISA, if such break-in service forfeiture is provided for in the applicable plan document.

Because I conclude that ERISA governs plaintiff's claim, I will not address these defenses.

**2.** Section 203(a)(2)(A) of ERISA provides:
 Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements (1) and (2) of this subsection.

Therefore, if plaintiff had a break-in-service under the applicable pension plan, his claims fail.

In *Tanzillo*, the court concluded that under the plan in effect at the time Tanzillo filed his claim, i.e. the 1978 plan, pension eligibility was to be determined under the terms of the plan in effect at the time of the alleged break-in-service. Application of the earlier plan, the court concluded, was consistent with section 203(b)(1)(F) of ERISA which expressly provides for the forfeiture of accrued credits for a break in service "under the rules of the plan with regard to breaks in service, as in effect on the applicable date." The court then determined that under the 1962 pension plan, *Tanzillo* had a break-in-service which caused him to forfeit previously accrued pension credits.

 Applying a similar analysis in this case, I look first to the plan in effect at the time plaintiff filed his pension claim in 1980, the 1977 Plan. The 1977 Plan provides benefits for all eligible employees based on their "continuous service." Section 5.1 of the Plan provides in pertinent part:

> The term "continuous service" as used in this Plan means continuous service in the employ of one or more of the Employing Companies, except as in this Section 5 otherwise provided, prior to retirement calculated from the Employee's last hiring date (this means in the case of a break in continuous service, continuous service shall be calculated from the date of reemployment following the last unremoved break in continuous service) in accordance with the following provisions; provided, however, that the last hiring date prior to the effective date of this

> (2) A plan satisfies the requirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C).
> (A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit from employer contributions.

Plan shall be based on the practices in effect at the time the break occurred. Therefore, continuous service for purposes of the 1977 Pension Plan is measured from the employee's last hiring date to the date of his retirement. Breaks in service after the effective date of the Plan occur when an employee quits, is discharged, is terminated because of a plant shutdown, or is absent for more than two years. However, the proviso in section 5.1 states that the last hiring date prior to the effective date of the Plan shall be based on the practices in effect at the time the break occurred.

Defendants contend that based on the practices then in effect, plaintiff's last hiring date was March 1, 1970 when he started work for the Bethlehem subsiduary in Spain. Plaintiff was considered a new employee in 1970 because he had elected to receive and keep the C & A payment. It was an established policy, reflected in the January 17, 1967 memorandum by G.W. Vary, that if a person who received and retained a severance allowance like the C & A, were rehired by Bethlehem or one of its subsidiaries, he or she would be considered a "new employee" and would not receive credit for any previous employment. It appears, therefore, that plaintiff had a break in service in 1970 which is fatal to his claim for pension credit for the period 1953–1970.

Plaintiff, however, contends that the policy regarding the C & A payments and forfeiture of pension credit had to be included in writing in the Pension Plan in order to be valid. In support of this contention, plaintiff relies on the language in *Tanzillo* to the effect that ERISA recognizes pre-ERISA breaks-in-service, "if such break-in-service forfeiture is provided for in the applicable plan document." 769 F.2d at 145. Plaintiff also apparently relies on section 402 of ERISA, 29 U.S.C. § 1102, which states that every employee benefit plan shall be established and maintained pursuant to a written instrument. Plaintiff contends that the policy with respect to C & A payments should have been set forth in writing, if not in the 1968 plan, then definitely in the 1977 plan, and that the 1967 memorandum is insufficient.

I find that plaintiff's contentions fail. First, plaintiff's reading of *Tanzillo* is unduly restrictive. Admittedly, no plan sets forth the policy regarding C & A payments which was in effect in 1970, five years before ERISA went into effect. However, the 1977 Plan specifically states that the last hiring date before the effective date of the Plan will be determined by the policies in effect at the time of the break. In this instance, one refers to policies which defendants had established and put into effect before the effective date of ERISA. I do not think *Tanzillo* requires pre-ERISA policies to be embodied in a written plan.[3]

Moreover, looking to the 1968 plan, section 5.1 of the Plan states in pertinent part:

> The number of years of continuous service of any participant shall be conclusively determined for all purposes of this Plan by the General Pension Board.

The General Pension Board clearly established its policy with respect to the C & A payments as early as 1967 as reflected in the January 27, 1967 memorandum from the Secretary of the General Pension Board, G.C. Vary to the Vice President of Bethlehem. There would be a break in service if the employee receiving the C & A payment elected not to return it. Therefore, the General Pension Board's handling of plaintiff's claim is consistent with the 1968 plan and the Board's policies.

---

3. I have reviewed plaintiff's counsel's letter dated March 28, 1986 which I have docketed. Counsel argues that under *Tanzillo*, the applicable plan is the 1968 Salaried Pension Plan. As I have noted, however, under *Tanzillo*, a reviewing court looks first to the plan in effect at the time the plaintiff filed his pension claim, which, in this case is the 1977 plan. In *Tanzillo*, the 1978 plan referred the court to the earlier plan; in this case, the 1977 plan refers me to the policies in effect at the time of the "break." Although I would agree with plaintiff that the policy would have to be incorporated into the pension plan after the effective date of ERISA, I do not believe I can impose such a rule on a policy which was in writing and which was applied consistently and with plaintiff's full knowledge before the effective date of ERISA. Plaintiff was a new employee as of March 1, 1970.

Similarly, section 402 of ERISA, requiring all terms and policies governing pension plans to be in writing, cannot be applied to plans before the effective date of ERISA. To hold otherwise would be to apply ERISA retroactively which is exactly what the Third Circuit in this case said could not be done. The " 'act or omission' provisions is a direction as to choice of law and is intended to ensure that ERISA is not applied retroactively." 765 F.2d at 51. Therefore, I conclude that consistent with section 203(b)(1)(F) of ERISA, plaintiff had a break in service in 1970 when he accepted and retained the C & A payment and that he forfeited the seventeen years of pension credit which he had accrued between 1953 and 1970.

If the events in this case had all occurred after the effective date of ERISA, i.e. plaintiff has worked in Venezuela until 1977, accepted and retained the C & A in 1977, and then worked for ten years before filing a claim for a pension, the outcome of this case might be different. First, the provision requiring written plans would govern and the policy governing C & A payments would have to be set forth in writing. More importantly, section 203(b)(1)(F) of ERISA would not govern because the "break" in service would have occurred after the effective date of ERISA.

In reviewing the Pension Board's determination to deny plaintiff benefits under the terms of the plan, I must defer to the Board's determination so long as its interpretation of the plan is neither arbitrary nor capricious. *Tanzillo*, 769 F.2d at 147. Because I conclude that the 1977 plan requires the policies in effect at the time of the break be applied and because the policy pertaining to C & A payments was clearly established and was consistently applied to plaintiff and he was aware of the policy, the Board's interpretation of the Plan and the break-in-service rule is neither arbitrary nor capricious.

An appropriate order follows.

ORDER

NOW, April 7, 1986, upon consideration of the cross-motions for summary judgment, the memoranda of law submitted by the parties, the arguments made orally by the parties, and for the reasons stated in the accompanying memorandum opinion, IT IS ORDERED that defendants' motion for summary judgment is GRANTED and plaintiffs' motion for summary judgment is DENIED. Judgment is entered in favor of defendants and against plaintiff.