16 F.3d 141
 17 Employee Benefits Cas. 2253
 Evan A. JONES, Plaintiff-Appellant/Cross-Appellee,
v.
UOP, Defendant-Appellee/Cross-Appellant,
and
Allied Signal Incorporated and The Signal Companies,
Incorporated Retirement Plan, Defendants-Appellees.
 Nos. 93-2046, 93-2205.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 1, 1993.
Decided Jan. 27, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied Feb.
25, 1994.*
 
 Gerald E. Kubasiak, Kubasiak, Cremieux & Fylstra, Marshall J. Burt, Merle L. Royce (argued), Chicago, IL, for plaintiff-appellant.
 Thomas J. Piskorski, Lawrence C. DiNardo (argued), Condon A. McGlothlen, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for defendants-appellees.
 Before POSNER, Chief Judge, CUMMINGS, Circuit Judge, and CRABB, Chief Judge.*
 POSNER, Chief Judge.
 
 
 1
 The plaintiff in a suit under ERISA (Employee Retirement Income Security Act, 29 U.S.C. Secs. 1001 et seq.) has appealed from the grant of summary judgment to both defendants on his claim for pension benefits. One of the defendants, UOP, has cross-appealed, challenging the district court's imposition upon it of a monetary penalty for failure to furnish information that the plaintiff had requested.
 
 
 2
 The facts, after we shear off a number of irrelevant details thrust on us by the plaintiff, are straightforward. In 1949 Evan Jones went to work for UOP, which at the time had a pension plan in which contributions by both employer and employee were used to buy annuities for the employee to which he would become entitled upon retirement. In 1960 Jones quit UOP for another company, but he returned the following year and remained in UOP's employ until he took early retirement in 1985. In 1968 UOP had amended its pension plan to base the amount of benefits to which the participant would become entitled upon retirement on years of "credited past service." "Service" was defined as "an Employee's last continuous period of employment with the Employer." Jones's employment with UOP was continuous only from 1961, because of his break in service in 1960.
 
 
 3
 By the time Jones retired, UOP had become a wholly owned subsidiary of The Signal Companies, Inc., and the UOP plan had merged into the Signal Plan, making Jones a participant in the latter plan. That plan, which also bases pension benefits on the employee's years of credited service, provides that credited service shall include all service credited to the employee under a predecessor plan.
 
 
 4
 As a matter of simple contract interpretation, Jones would have no right to count the years that he worked for UOP before his break in service in 1960 in determining the benefits to which he is entitled; for the Signal Plan incorporates the relevant provisions of the predecessor plan, the UOP plan, which as amended in 1968 denied credit for years in which an employee had been employed before a break in service. It is true that the benefits that Jones earned under the 1940 plan for the eleven years he worked before his break in service vested, so that when he retired in 1985 he received not only the pension benefits due him under the Signal Plan but also a supplemental benefit consisting of the contributions that he had made to the 1940 plan plus interest to 1985. Apparently (although this is not clear) he did not receive the annuity bought for him under the 1940 plan because that annuity had been used to fund the defined benefit in the Signal Plan, and he did not receive the employer contributions because his entitlement to them was contingent on his working until the normal retirement date, rather than electing early retirement as he did. These are details; so too the fact that his rights had vested under the 1940 plan. The only important point, from the standpoint of contract interpretation, is that nothing in that plan had purported to vest him with the right to use his years as an employee participating in it to increase the benefits to which he would be entitled under a successor plan.
 
 
 5
 We must consider whether ERISA requires a different result from what a straightforward contract interpretation would produce. ERISA had not yet been enacted in 1968, when the critical amendment to the UOP plan was made, but the provisions of ERISA are to a degree retroactive. Thus, in determining whether an employee's pension benefits have vested, the employer is required to count all the employee's years of service, before and after ERISA went into effect. But there is an exception for "years of service before [ERISA] first applies to the plan if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date." ERISA Sec. 203(b)(1)(F), 29 U.S.C. Sec. 1053(b)(1)(F); Coleman v. Interco Incorporated Divisions' Plans, 933 F.2d 550, 551 (7th Cir.1991). The plan in effect when on December 31, 1975, ERISA became applicable to UOP's pension plan was the plan as amended in 1968, which disregarded years of service prior to a break in service. But as Jones points out, the issue in this case is not whether his rights under the 1940 plan or the 1968 amended plan had vested, which everyone agrees they had done regardless of ERISA; it is rather how many years he is entitled to credit in computing his benefits under the Signal Plan. That issue is governed, he says, not by section 203 of the Act but by section 204, 29 U.S.C. Sec. 1054, which with a number of qualifications and exceptions requires the employer, in determining the amount of benefits to which the employee is entitled, to credit the employee's period of service, and does not mention breaks in service. Jones does not explain what sense it makes to treat vesting and accrual of benefits differently with respect to breaks in service, and the only two cases to have considered the question read the exception in section 203 (vesting) into section 204 (accrual of benefits). Redmond v. Burlington Northern Railroad Company Pension Plan, 821 F.2d 461 (8th Cir.1987); Jameson v. Bethlehem Steel Corp., 634 F.Supp. 688 (E.D.Pa.1986), aff'd without opinion, 802 F.2d 447 (3d Cir.1986). But they did so without any analysis.
 
 
 6
 The purpose of section 204 is to prevent the employer from defeating the vesting section, which immediately precedes it in the statute, by backloading benefits (that is, making benefits accrue very slowly until the employee is near retirement age) so that the employee's pension rights, even though vested after 10 years, have very little value until he has completed a much longer period of service. Jeffrey D. Mamorsky, Employee Benefits Handbook Sec. 18.16 (3d ed. 1992). The provision addressed to pre-ERISA plans, section 204(b)(1)(D), 29 U.S.C. Sec. 1054(b)(1)(D), leaves such a plan undisturbed unless the participant's accrued benefits are less than half of what he would have been entitled to had ERISA governed the plan. Mamorsky, supra, Sec. 18.18. It is arguable that this provision--ignored in Redmond and Jameson--occupies the field, so far as the effect of pre-ERISA breaks in service is concerned, leaving no room to consider the interplay between section 203 and (the rest of) 204. But it would be perilous to assume from the absence of an express reference to breaks in service that section 204(b)(1)(D) was intended to override them. The evil at which section 204 is directed is backloading; severely backloaded plans are invalidated by section 204(b)(1)(D) even if they were adopted before ERISA took effect. Backloading is a distinct problem from breaks in service, and there is no indication that Congress in dealing expressly with the former problem in section 204(b)(1)(D) meant for the latter problem to be treated differently under section 204 than under section 203. Jones was credited with every year that he worked for UOP, albeit his 1949-1960 service was credited to the 1940 pension plan and his subsequent service, after the break, to the Signal Plan; and he does not argue that either plan is backloaded. He is seeking, in effect, double credits for 1949 to 1960--the credit that he has already used to obtain a pension benefit under the 1940 plan and credit for the same years toward the pension he earned under the Signal Plan. There is nothing to suggest that section 204 was intended to confer such a windfall. That section should be read together with section 203 to protect the employee against efforts to circumvent section 203's vesting rules, rather than to defeat break in service provisions in plans adopted before ERISA was. There were no such efforts here.
 
 
 7
 We turn to the cross-appeal. Section 104(b)(4) of ERISA requires the plan administrator to supply certain types of document to a plan participant upon request. 29 U.S.C. Sec. 1024(b)(4). Violations are punishable by a penalty of "up to $100 a day from the date of such failure or refusal." 29 U.S.C. Sec. 1132(c). "Administrator," so far as bears on this case, means either "the person specifically so designated by the terms of the" plan instrument, or, in the absence of such designation, the plan's sponsor. 29 U.S.C. Sec. 1002(16)(A); Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 62 (4th Cir.1992). The district court found that there had been 541 days of unjustified delay by UOP in responding to Jones's information requests and assessed a penalty of $20 per day on UOP.
 
 
 8
 The Signal Plan under which Jones retired designated The Signal Companies in LaJolla, California as the "Plan Administrator," but also authorized Signal to appoint a committee to serve as the plan administrator. Jones did not have a copy of the plan--it was one of the documents he wanted--but he had the Summary Plan Description. That document, in a section entitled "Plan Administration," describes The Signal Companies as the "plan sponsor," gives a street address and phone number in LaJolla, and states that the "plan is administered by Signal through an Administrative Committee," for which no separate address or phone number is given. The logical inference, especially to a lawyer--and Jones was represented by counsel throughout--was that requests for documents and other information concerning the plan should be addressed to the Signal Plan Administrative Committee c/o The Signal Companies in LaJolla. None of Jones's requests was so addressed; all were directed to UOP's legal and personnel departments, and it was those departments whose delays in responding resulted in the imposition of statutory penalties. The district court held that, by failing to direct Jones to the Administrative Committee, the UOP legal and personnel officers with whom he corresponded "held themselves out" as the plan administrator and should therefore be treated as the plan administrator. We do not agree. The statute is plain: if a plan administrator is designated in the plan instrument, that is who has the statutory duty to respond to requests for information in timely fashion under threat of monetary penalty if he fails to do so.
 
 
 9
 We can imagine a case in which the plan sponsor would be estopped to deny that it was the administrator; the district judge may have thought this such a case. If UOP's legal department had told Jones's lawyer to forget about the Committee and direct all his document requests to the legal department, and if in reliance on this advice the lawyer had forgone an opportunity to obtain the documents from the plan administrator and Jones had suffered a harm as a result, the elements of equitable estoppel would be present. Thomason v. Aetna Life Ins. Co., 9 F.3d 645, 648 (7th Cir.1993). We have no reason to doubt the applicability of that venerable doctrine, as a matter of federal common law, to suits for the statutory penalty, though a divided panel of the Ninth Circuit disagrees. Moran v. Aetna Life Ins. Co., 872 F.2d 296 (9th Cir.1989). That panel may (see id. at 300) have confused the use of equitable estoppel to prevent runarounds in responding to information requests with its use to vary the terms of an ERISA plan, which the statute requires be in writing. 29 U.S.C. Secs. 1102(a)(1), (b)(3). The latter is a questionable use of estoppel because it opens the way to oral modification, Bash v. Firstmark Standard Life Ins. Co., 861 F.2d 159, 163-64 (7th Cir.1988); Coleman v. Nationwide Life Ins. Co., supra, 969 F.2d at 62, though it has a foothold in our decisions. See Thomason v. Aetna Life Ins. Co., supra, 9 F.3d at 648-50. But we needn't run this fox to ground. The elements of an estoppel have not been established. While UOP's legal and personnel departments responded to Jones's requests, they did not tell him to deal with them rather than with the Administrative Committee; for all they knew, he was in touch with it and his dealings with them were in the nature of prelitigation jockeying and settlement negotiations. And there was no detriment; one reason the district court imposed only a $20 a day penalty was that Jones was unable to show any harm from the delays in responding to his various requests. Another reason was Jones's own delay in seeking the documents--the first request was made almost four years after he retired.
 
 
 10
 The First Circuit, and possibly the Fifth and Eleventh, are willing to deem nonadministrators "de facto" plan administrators; the other circuits (except the Third and the Eighth, which have not been heard from on this issue) are not. Compare Law v. Ernst & Young, 956 F.2d 364, 373-74 (1st Cir.1992); Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1077 (5th Cir.1990), and Rosen v. TRW, Inc., 979 F.2d 191 (11th Cir.1992), with Anweiler v. American Electric Power Service Corp., 3 F.3d 986, 994 and n. 5 (7th Cir.1993); Lee v. Burkhart, 991 F.2d 1004, 1010 n. 5 (2d Cir.1993); McKinsey v. Sentry Ins., 986 F.2d 401, 403-05 (10th Cir.1993); Coleman v. Nationwide Life Ins. Co., supra, 969 F.2d at 62; VanderKlok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 617-18 (6th Cir.1992); Moran v. Aetna Life Ins. Co., supra, 872 F.2d at 298-99; Davis v. Liberty Mutual Ins. Co., 871 F.2d 1134, 1138 (D.C.Cir.1989). Only Moran discusses the alternative approach of estoppel, which is appealing because it makes transparent the functional considerations that should guide decision. How appealing we need not decide in this case. The statute is plain and severe and ought not be stretched beyond what is possible with the use of familiar, clear, tested, administrable doctrines--such as equitable estoppel--for preventing the evasion of legal duties. If the plan designates an administrator and the sponsor makes no effort to impede participants' access to him, we cannot see what purpose would be served by the imposition of statutory penalties.
 
 
 11
 The judgment is affirmed in part and reversed in part in accordance with this opinion and the case is remanded with instructions to enter judgment for the defendants on all counts.
 
 
 
 *
 Hon. Ilana Diamond Rovner took no part in the consideration of the Suggestion for Rehearing En Banc
 
 
 *
 Hon. Barbara B. Crabb of the Western District of Wisconsin