**Herbert C.M. HOOVER, Plaintiff,**

v.

**BANK OF AMERICAN CORPORATION,
Defendant.**

**No. 8:02–CV–478–T–23TBM.**

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 24, 2003.

William D. Mitchell, Mitchell Law Group, Tampa, FL, for Plaintiff.

Michael Robert Cavendish, McGuire-Woods LLP, David M. Wells, McGuire-Woods LLP, Jacksonville, FL, David F. Dabbs, McGuireWoods LLP, Richmond, VA, Amy Wilsey Miller, McGuirewoods LLP, Washington, DC, for Defendant.

## ORDER

MERRYDAY, District Judge.

On August 21, 2003, United States Magistrate Judge Thomas B. McCoun issued a report and recommendation (Doc. 74) on the parties' cross-motions for summary judgment (Docs. 52, 53). The defendant objects to the report and recommendation (Doc. 76). Upon consideration, the objections to the report and recommendation are overruled, and the report and recommendation is **ADOPTED**. Accordingly, the defendant's motion for summary judgment (Doc. 52) is **GRANTED** with respect to the plaintiff's fourth claim for relief as

defined in the report and recommendation. The plaintiff's motion for summary judgment (Doc. 53) is **GRANTED** with respect to the plaintiff's first, second, and third claims for relief as defined in the report and recommendation. This matter is remanded for further administrative proceedings consistent with the report and recommendation. The Clerk is directed to (1) terminate any pending motions and (2) close the file.

## REPORT AND RECOMMENDATION

McCOUN, United States Magistrate Judge.

THIS MATTER is before the court on referral by the Honorable Steven D. Merryday for a Report and Recommendation on the following:

(1) **Plaintiff's Motion for Judgment on the Pleadings or Alternatively Summary Judgment (Doc. 11);** [1]

(2) **Defendant Bank of America's Motion for Judgment on the Pleadings or in the Alternative for Summary Judgments and Memorandum on Dispositive Motions** (Doc. 17) and Plaintiff's response in opposition (Doc. 24), as corrected (Doc. 37);

(3) **Defendant Bank of America's Motion for Summary Judgment, with Memorandum** (Doc. 52) and Plaintiff's response (Doc. 60); and

(4) **Plaintiff's Motion for Summary Judgment** (Doc. 53),[2] Defendant's response (Doc. 59), as corrected (Doc. 69), and Plaintiff's supplemental statement of facts (Doc. 71) in response to Defendant's Amended Answer.

Additionally, the parties have filed voluminous exhibits in support of their pleadings.

---

1. Defendant's response is incorporated into its cross-motion for judgment on the pleadings (Doc. 17).

2. Plaintiff filed an exact duplicate of the motion and exhibits. *See* (Doc. 54).

Oral arguments on the motions were conducted on May 28, 2003. *See* (Doc. 72).

At a hearing on Defendant Bank of America's Motion for Leave to Amended Answer to Plaintiff's Complaint (Doc. 22) conducted on April 15, 2003, the parties advised that the cross-motions for summary judgment subsume and incorporate the cross-motions for judgment on the pleadings. *See* (Doc. 65). Therefore, this Report and Recommendation addresses with specificity only the motions for summary judgment.

## I.

The undisputed facts establish that Plaintiff began employment with Citizens Bank & Trust Company (hereinafter "Citizens") in North Carolina on August 13, 1964. As of 1973, Plaintiff was the Executive Vice President and a Director of Citizens. In March 1973, Citizens merged into North Carolina National Bank (hereinafter "NCNB"), and Plaintiff was employed as a "City Manager" after the merger. At the time of the merger, Plaintiff was a participant in Citizens' pension plan. Upon the merger of the two companies, the Citizens pension plan was merged into the NCNB pension plan (hereinafter "the Plan"). On June 30, 1973, Plaintiff terminated his employment with NCNB. On February 1, 1974, Plaintiff began his employment with Exchange Bank (hereinafter "Exchange") in Tampa, Florida. On or about December 31, 1982, Exchange merged into NCNB, and the Exchange pension plan, of which Plaintiff was a participant, was merged into the NCNB Plan.

On November 30, 1983, Plaintiff sent a letter addressed to Judy Clark, Secretary of the NCNB Retirement Committee (hereinafter "Committee"), requesting confirmation that his aggregate years of service with Citizens and Exchange would contribute to his total accrued benefit and vesting service. *See* Dep. of Herbert C.M. Hoover, Exh. 16 (Doc. 52, Exh. F). Subsequently, Plaintiff sent a letter dated January 18, 1984, to Jack E. Boland, Personnel Manager, asking him to initiate an inquiry into his "years of service benefit with the bank" and indicating that he had not received a response to his prior request. *See id.*, Exh. 17. In a responsive letter dated January 20, 1984, Ms. Clark advised Plaintiff that his service would be determined from the date of his employment with Exchange, or February 1, 1974, in accordance with ERISA rules and because he was not vested under NCNB's Retirement Plan when he terminated his service in 1973. *See id.*, Exh. 12.

It appears that the Plaintiff next made inquiry of these matters in or about December 1997, by completing a "Prior Employment Questionnaire." In a December 17, 1997, response to this inquiry, the NationsBank[3] Associate Center sent Plaintiff an outline of his benefit plan with respect to his prior service.[4] *See* Correspondence related to Hoover Initial Claim (Doc. 17, Exh. A, Vol. I). By letter dated December 31, 1997, Plaintiff wrote to Terry Abel in the legal department regarding his "NationsBank Employment Service Credit," therein recounting the bank's response to his questionnaire. *See* Dep. of Herbert C.M. Hoover, Exh. 6 (Doc. 52, Exh. F). He further stated:

> The NationsBank Associate Center has informed me that there is no appeal

---

3. NCNB became NationsBank, which then became Bank of America in 1998.

4. By this response, NationsBank awarded Plaintiff with an additional 107 months (or 8.917 years) of pension vesting service, but no additional months of pension benefit service. At this point, Plaintiff was thus credited with 32.9 years of vesting service and 24.0 years of benefit service.

available, with respect of (sic) Nations-Bank's decision denying me benefit service for this period of time. However, I wish to reserve my legal options regarding the pension benefits issue, while I am employed at NationsBank. Therefore, as my manager, I will appreciate it if you will inform me if NationsBank does not wish to toll the statute of limitations with respect of (sic) this matter, during my employment.

See id. It does not appear from the exhibits that Mr. Abel responded to this. In January 1998, another attempt to explain the bank's position was made by Donna Ball in an electronic mail message. See Correspondence related to Hoover Initial Claim (Doc. 17, Exh. A, Vol. I).

By letter dated April 13, 2001, Plaintiff requested Ms. Ball to review a March 2001 decision of the district court for the Southern District of New York, which he believed had applicability to his claim for the additional accrued benefits based on his employment with Citizens.[5] See Dep. of Herbert C.M. Hoover, Exh. 7 (Doc. 52, Exh. F).[6] On May 30, 2001, Plaintiff wrote another letter to Ms. Ball inquiring whether he was required to complete the specific form referred to in the Bank of America "Associate Handbook" in order for his April 13, 2001, request to be treated as a claim. See id., Exh. 9. Plaintiff also submitted evidence in support of his claim for credit for his prior service with Citizens and NCNB. See id.

In a seven-page letter dated June 8, 2001, Bonnie J. Kaul, Vice President, Personnel Services Case Manager III, denied Plaintiff's request for a change to be made to his Plan benefits. See Letter from Bonnie J. Kaul to Herbert C.M. Hoover (June 8, 2001), Correspondence related to Hoover Initial Claim (Doc. 17, Exh. A, Vol. I; Doc. 53, Exh. 4). The letter recited Plaintiff's employment history, discussed Plan provisions under the 1973 and 1982 Plans,[7] ERISA rules applicable to service before January 1, 1976, and related case law as the bases for the denial. See id. Finally, the letter advised Plaintiff of his appeal rights. See id. On or about July 31, 2001, Plaintiff sent a letter demanding documents needed for proof of his claim. See Letter from William D. Mitchell to Bank of Am. Corp. Benefits Comm. (July 31, 2001), Correspondence related to Hoover Initial Claim (Doc. 17, Exh. A, Vol. I; Doc. 53, Exh. 4).

By letter dated September 4, 2001, Plaintiff, through counsel, appealed the June 8, 2001, decision. See Letter from William D. Mitchell to Bank of Am. Corp. Benefits Comm. (Sept. 4, 2001), Correspondence related to Hoover Appeal (Doc. 17, Exh. A, Vol. I; Doc. 53, Exh. 10). In a letter dated January 2, 2002, Dana Farber, on behalf of the Benefits Appeals Committee (hereinafter "Appeals Committee"), upheld the determination of Ms. Kaul that Plaintiff's service with Citizens and NCNB from 1964 to 1973 did not count as "Benefit Service" under the Bank of America

---

5. The decision referenced was *McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund,* 153 F.Supp.2d 268 (S.D.N.Y.2001). The letter also cited *Estate of Edward Dermady et al. v. Eastman Kodak,* 136 F.Supp.2d 181 (W.D.N.Y.2001). *See* Letter from Herbert C.M. Hoover to Donna Ruth Ball (April 13, 2001), *See* Dep. of Herbert C.M. Hoover, Exh. 7 (Doc. 52, Exh. F).

6. Plaintiff refers to a letter from Ms. Ball dated January 21, 1998, in response to his request for pre-ERISA benefits. This letter is not in the record.

7. While ostensibly citing to language from the 1982 Plan in effect at the time of the Exchange merger with NCNB, Ms. Kaul cites to and quotes from definitions within the 1980 Plan but does not reference the 1982 Amendments.

Pension Plan. *See* Letter from Dana Farber to William D. Mitchell (Jan. 2, 2002), Correspondence related to Hoover Appeal (Doc. 17, Exh. A, Vol. I; Doc. 53, Exh. 2).

Plaintiff filed the instant action alleging that Defendant's refusal to credit him for service at Citizens and NCNB from 1964–1973 constituted a violation of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA" or "the Act") section 204, 29 U.S.C. § 1054, and the regulations promulgated thereunder (First Claim for Relief); a violation of ERISA section 210(b), 29 U.S.C. § 1060(b) (Second Claim for Relief); and a violation of the Plan (Third Claim for Relief); and that Defendant's refusal to consider Plaintiff's claim that a partial termination occurred following the merger between Citizens and Bank of America constituted a violation of the Plan, the Internal Revenue Code, and the regulations promulgated thereunder (Fourth Claim for Relief).[8] The parties filed cross-motions for judgment on the pleadings (Docs. 11, 17) and cross-motions for summary judgment (Docs. 52, 53, 54).

## II.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining whether summary judgment is appropriate. Fed.R.Civ.P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hairston v.*

*Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir.1994). The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception. *Perkins v. School Bd. of Pinellas County,* 902 F.Supp. 1503 (M.D.Fla. 1995). It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function ... to decide issues of material fact, but rather determine whether such issues exist to be tried ..." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston,* 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. *Hairston,* 9 F.3d at 921; *see also Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir.1997). All the evidence and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997).

## III.

### A.

■ As a threshold matter, the Defendant argues that Plaintiff's claims are

---

**8.** At oral arguments, Plaintiff advised that the four counts are raised as alternative grounds for relief.

barred by applicable statutes of limitations or laches or both.[9] As grounds, Defendant argues that Plaintiff's claim for benefits was denied in 1984, eighteen years before he filed suit, well in excess of any possible limitations period under either Florida or North Carolina law.

■ By its terms, ERISA has no application to any cause of action which arose before January 1, 1975. 29 U.S.C. § 1144(b)(1). However, ERISA is silent as to any statute of limitations for suits brought under section 502(a) to recover benefits. *See* 29 U.S.C. § 1132. Thus, courts borrow the forum state's statute of limitations for the most closely analogous action if it is not inconsistent with federal law or policy to do so and there is not a more closely analogous federal statute of limitations. *Harrison v. Digital Health Plan*, 183 F.3d 1235, 1238 (11th Cir.1999) (citing *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 159 n. 1 (11th Cir.1992)); *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir.1998). Federal courts have almost uniformly held that a suit for ERISA benefits pursuant to section 502(a)(1)(B) [10] is most closely analogous to breach of contract claims for statute of limitations purposes. *See* Harrison, 183 F.3d at 1240 (citing *Blue Cross & Blue Shield of Ala. v.*

*Sanders*, 138 F.3d 1347 (11th Cir.1998), and surveying case law from other circuits). Under Florida law, a five-year statute of limitations applies to breach of contract actions. *See* Fla. Stat. ch. 95.11(2)(b). As for the partial termination claim, it arises from activities or occurrences that predate ERISA and that all appear to have occurred in North Carolina. Under North Carolina law, a three-year statute of limitations applies to contracts and statutory liability actions. *See* N.C. Gen.Stat. §§ 1–52(1), 1–52(2); *Glover v. First Union Nat'l Bank of N.C.*, 109 N.C.App. 451, 428 S.E.2d 206, 208 (1993).

Defendant urges that Plaintiff's initial "claim" was denied by Judy Clark's letter of January 20, 1984, and his claims accrued as of that date. If so, Defendant would prevail on this motion as the Plaintiff's claims are filed well beyond any limitations period commencing in 1984. However, as discussed below, under the *Paris* standard, Plaintiff's ERISA-based claims did not accrue at any time prior to June 2001.

■ A cause of action accrues when the events upon which it is based occur, but in the context of an ERISA claim, a cause of action does not become an enforceable demand until a claim is denied. *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.*, 637 F.2d 357, 361 (5th Cir.1981).[11] Thus, in this circuit, under ERISA, "... a cause of action does not accrue until an application is denied." *Id.*[12]

---

9. The equitable doctrine of laches will bar a claim when the following elements are demonstrated: (1) a delay in asserting a right or a claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim is asserted. *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1230 (11th Cir.2000) (quoting *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997)). Defendant cites to no legal authority or factual basis to support its claims of laches, and except as discussed below, Defendant's assertion of laches warrants no further discussion.

10. Plaintiff brings this suit under section 502(a)(1), (2), and (3), although the provisions of subsection 2 do not appear applicable to any of Plaintiff's allegations.

11. Decided prior to October 1, 1981, *Paris* is binding precedent in this circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir.1981).

12. As the Defendant notes, there is some "tension" between the accrual standard established in *Paris* and that imposed in other circuits, where a cause of action accrues under ERISA upon a clear repudiation that is

■ There is no evidence that Plaintiff ever filed a formal application for benefits. Plaintiff's first correspondence concerning the issue of his benefits was his November 30, 1983, letter to Judy Clark requesting confirmation that his aggregate years of service with Citizens and Exchange would contribute to his total accrued benefit and vesting service. *See* Dep. of Herbert C.M. Hoover, Exh. 16 (Doc. 52, Exh. F). Plaintiff next sent a letter dated January 18, 1984, to Jack E. Boland, asking him to initiate an inquiry into his "years of service benefit with the bank," indicating that he had not received a response to his prior request. *See id.*, Exh. 17. Plaintiff made another inquiry into these matters in or about December 1997, by completing a "Prior Employment Questionnaire." By letter dated December 31, 1997, Plaintiff wrote to Terry Abel regarding his "NationsBank Employment Service Credit," therein recounting the bank's response to his questionnaire and indicating that he wished to reserve his legal rights concerning his benefits. *See* Dep. of Herbert C.M. Hoover, Exh. 6 (Doc. 52, Exh. F). Each of these inquiries appear to be informal inquiries concerning the status of his accrual of service and vesting benefits.

More significantly, Defendant's responses to Plaintiff's correspondence, such as the January 20, 1984, letter from Judy Clark and the outline of benefits from the NationsBank Associate Center dated December 17, 1997, do not indicate a clear repudiation of Plaintiff's request for benefit accrual credit. Indeed, by the December 1997 correspondence, Defendant appears to have changed its earlier position by granting Plaintiff an additional 107 months of vesting service based on his years at Citizens.

On April 13, 2001, and again on May 30, 2001, Plaintiff wrote to Donna Ball. In the first letter, he requested Ms. Ball to consider the import of a recent court decision to his "request to receive credit for the subject eight years and eleven months of pre-ERISA service." *See* Dep. of Herbert C.M. Hoover, Exh. 7 (Doc. 52, Exh. F). In the followup letter in May, Plaintiff wrote, "Please inform me now if I need to complete such a form in order for the Bank to consider my April 13th request as a claim." *Id.* at Exh. 9. Plaintiff closed with the statement, "My claim is for the eight (8) years and eleven (11) months as a former pension plan participant...." *Id.* This was Plaintiff's first clear indication of an intent to make a formal request for additional benefits. Further, only by its responsive letter from Bonnie Kaul dated June 8, 2001, did Defendant give a clear repudiation of Plaintiff's "claim" for benefit accrual credit in accordance with the provisions of the Plan. While the earlier inquiries and responses might suggest, under other formulations of the standard, that Plaintiff's First, Second, and Third claims accrued earlier in time, under the *Paris* standard for ERISA claims, the claims accrued in 2001. Therefore, this suit filed in March

known or should be known to plaintiff, regardless of whether the plaintiff has filed a formal application for benefits. *See Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan*, 201 F.3d 44, 47 (2d Cir.1999) (following *Union Pac. R.R. v. Beckham*, 138 F.3d 325, 330–31 (8th Cir.1998); *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65–67 (7th Cir.1996); *Martin v. Constr. Laborer's Pension Trust for S. Cal.*, 947 F.2d 1381, 1384–86 (9th Cir.1991)). Even within the Eleventh Circuit, *Paris* appears at odds with pre-ERISA case law addressing pension disputes. *See Vaughter v. E. Air Lines, Inc.*, 817 F.2d 685, 692 (11th Cir.1987) (Under Florida law, accrual of claim occurred upon the aggrieved party's "discovery or duty to discover the act constituting an invasion of his legal rights." Thus, pilots' claim accrued when they "became aware of the facts necessary to make their claims, not when they discovered that they had a possibly viable legal claim based upon those facts.").

2002 was well within the applicable limitations period.

■ In his Fourth Claim for Relief, Plaintiff alleges that "the Plan provides for full vesting of benefits if a partial termination occurs." (Doc. 1 at 9). He further alleges that by failing to consider his claim that a partial termination occurred after the merger of Citizens and NCNB, "the Committee violated the Citizens Plan and the Internal Revenue Code and regulations thereunder." *Id.* As relief, Plaintiff seeks a declaration that a partial termination occurred as alleged and that he is vested in the benefit accrued under the Citizens Plan. As his claim has evolved and is now argued on his motion for summary judgment, Plaintiff complains that the Appeals Committee violated the provisions of the 2000 Plan by failing to consider his suggestion, first raised in his appeal letter of September 2001, that it review the 1973 merger between Citizens and NCNB to determine if a partial termination occurred. *See* (Doc. 53 at 18–19).

At its core, the claim that a partial termination occurred is founded on the poorly supported factual assertion that numerous Citizens plan participants, including Plaintiff himself, left NCNB shortly after the merger.[13] Under provisions of the Internal Revenue Code, treasury regulations, and qualified plans thereunder, a substantial reduction in retirement plan participants attributable to involuntary exclusions or employee termination may constitute a partial plan termination. *See* 26 U.S.C. §§ 401(a)(7), 411(d)(3); 26 C.F.R. § 1.411(d)–2(b)(1). To be a qualified trust under 26 U.S.C. § 401, the plan must pro-

vide that in the event of a termination or partial termination, the rights of the affected employees to benefits accrued to the date of such termination must be nonforfeitable. *See Collignon v. Reporting Servs. Co.,* 796 F.Supp. 1136 (C.D.Ill.1992). Alleging that the Citizen plan was such a qualified plan and contained such provision, Plaintiff's complaint asks the court to declare that such a partial termination did occur sometime about a year after the Citizen/NCNB merger and to declare that his services prior to that merger are nonforfeitable.

This fourth claim, sounding in contract, is clearly barred under the North Carolina statute of limitations and under the doctrine of laches. The circumstances giving rise to this claim occurred in North Carolina in 1973 and 1974 and predate the enactment of ERISA. Such claim accrued long ago, and Plaintiff suggests no basis or justification for a tolling of the limitations period. By reason of the passage of time resulting from Plaintiff's delay in raising this matter, evidence of what actually occurred during the relevant time period has all but minimally been lost or destroyed such that there is no basis to evaluate the claim on its merits, even if that were appropriate. Plaintiff's repackaging of this claim on his motion for summary judgment so as to make the claim timely is disingenuous. The Appeals Committee had no duty to consider this time-barred claim. Thus, Defendant is entitled to summary judgment on Plaintiff's Fourth Claim for Relief.

---

**13.** In his motion for summary judgment, Plaintiff urges that about one year after the Citizens/NCNB merger, 15 of 33 Citizens plan participants had left NCNB. (Doc. 53 at 19 n. 11). Whether such departures were voluntary or forced is not clearly established, although Plaintiff makes a vague claim that he was terminated. In any event, apart from the limitations/laches issues, the evidence in wholly insufficient to substantiate this claim on the merits. Plaintiff complains that his lack of cogent evidence on this matter results from the Defendant's failure to retain and produce relevant documents, but it is better explained by the fact that he waited nearly thirty years to raise this complaint.

### B.

Defendant also argues that Plaintiff's claims are barred for failure to exhaust administrative remedies.[14] In particular, Defendant argues that Plaintiff's claim under ERISA section 210 (Second Claim for Relief) was not raised at all in his administrative appeal.[15]

██ Plaintiff must exhaust available administrative remedies before bringing ERISA claims in federal court. *Counts v. Am. Gen. Life and Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir.1997) (citations omitted); *Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1226 (11th Cir.1985). The court applies the exhaustion requirement strictly and recognizes narrow exceptions based on exceptional circumstances, such as where the administrative scheme is unavailable, futile, or fails to offer an adequate legal remedy. *Perrino v. S. Bell Tel. & Tel. Co.,* 209 F.3d 1309, 1318 (11th Cir.2000).

██ A fair reading of Plaintiff's appeal letter of September 4, 2001, reveals that Plaintiff adequately raised through the administrative process his claim that Defendant failed to treat his service with predecessor employers as service with the Defendant. *See* Letter from William D. Mitchell to Appeals Committee (Sept. 4, 2001), Correspondence related to Hoover Appeal (Doc. 17, Exh. A., Vol. I; Doc. 53,

Exh. 2). In the introductory paragraph, the letter urges:

> Mr. Hoover has spent his entire career working for Bank of America or one of its predecessors. Had he been with Bank of America from the outset of his career there is no question that all his service would be counted. But economically he has worked on behalf of Bank of America or its predecessors his entire career. It is therefore equitable that he receive full service credit.

*Id.* at 1. The letter further specifies:

> The 1973 Plan document for Citizens must be reviewed to determine Mr. Hoover's accrued benefit and vesting status under that Plan document.
>
> The 1973 merger documents must be reviewed to determine the treatment of Mr. Hoover's Citizens bank service and vesting status.
>
> The 1973 merger needs to be reviewed to determine whether a partial termination occurred.
>
> The NCNB plan documents for 1973 and subsequent years need to be reviewed to determine how Mr. Hoover's Exchange Bank service was treated under those documents.
>
> The 1982 Plan document for Exchange Bank must be reviewed to determine Mr. Hoover's accrued benefit and vesting status under that Plan. It appears that Mr. Hoover was partially vested

---

14. Although Defendant admits in its Amended Answer that Plaintiff exhausted his administrative remedies, *see* (Doc. 68 at 6, ¶ 59), Defendant argues in its motion for summary judgment and at oral arguments that its admission was a general admission that Plaintiff had pursued the Plan administrative process as to some claims and did not intend to waive the defense of failure to exhaust. Defendant further points out that it also raised the affirmative defense of failure to exhaust "to the extent" that Plaintiff had not done so. *See* (Doc. 52 at 13 n. 8); *see also* (Doc. 68 at 9, ¶ 3).

15. . Defendant also argues that Plaintiff's partial termination claim (Fourth Claim for Relief) was raised inadequately and only in passing in his appeal letter of September 4, 2001, and thus was not exhausted. Because the court has determined that this claim is time-barred, the court will not address this contention or the merits of this claim except to note that the appeal letter, while short on specifics, clearly raised the necessity for consideration of the partial termination issue.

and perhaps fully vested when the merger with NationsBank occurred.

The 1982 merger documents must be reviewed to determine the treatment of Mr. Hoover's Citizens bank service as a result of the merger. . . .

The post 1982 NCNB documents need to be reviewed to determine how Mr. Hoover's Exchange Bank service was treated under those documents.

All communications from Bank of America and its predecessors to Mr. Hoover that report on his vesting and accrued benefits need to be reviewed.

All prior calculations must be reviewed to determine if the minimum ERISA benefit accrual and vesting standards are met. . . .

*Id.* at 1–2. Such statements are sufficient to have raised with the Appeals Committee the issue of Plaintiff's prior service with predecessor employers. Therefore, Plaintiff's claim under ERISA section 210 is not barred by a failure to exhaust administrative remedies.

### C.

■■■■■ Defendant also urges that Plaintiff's Complaint should be dismissed in its entirety because of his failure to name the appropriate defendant in this action. More specifically, Defendant contends that the Bank of America lacks the power to grant the relief he seeks by the first three counts, and the Fourth Claim for Relief alleges misconduct only by the Bank's Pension and Benefits Committee. The proper party defendant in an action for ERISA benefits is the party that controls the administration of the plan. *Garren v. John Hancock Mut. Life Ins. Co.,* 114 F.3d 186, 187 (11th Cir.1997) (citations

omitted). Even if the plan instrument designates a plan administrator other than the company, if the company is acting as a plan administrator, it can be held liable for ERISA violations. *Rosen v. TRW, Inc.,* 979 F.2d 191, 193–94 (11th Cir.1992). Although the 2000 Plan (Doc. 17, Exh. A, Vol. II) designates the Committee as the Plan administrator and the 1960 Plan (Doc. 17, Exh. A, Vol. I) designates the Retirement Committee as the Plan administrator, the 1980 Plan designates NCNB as the plan administrator. *See* NCNB Plan Document 1980 at Art. IX, § 9.1 (Doc. 17, Exh. A, Vol. I). At any rate, regardless of the Plan's express designation of the plan administrator, it appears that Defendant administrates its plan through the Committee. Accordingly, Plaintiff's suit may be maintained against the Bank of America as the named defendant.

### IV.

### A.

By his ERISA claims, Plaintiff seeks the award of credit for 8.875 years of service with Citizens Bank and NCNB from August 13, 1964, to June 30, 1973.[16] Plaintiff argues that Defendant improperly refused to credit him for this service for benefit accrual purposes under the terms of the Plan in effect at applicable times. Additionally, Plaintiff argues that such refusal violates the benefit accrual requirements of ERISA sections 204(b) and 202(b) and the provisions of ERISA governing the maintenance of a plan of a predecessor employer at section 210(b). *See* 29 U.S.C. §§ 1054(b)(4)(A), 1052(b)(1), 1060(b)(1). Defendant argues in response and on its motion for summary judgment that Plaintiff is not entitled to the additional benefit

---

16. Plaintiff makes a passing request for an additional .58 years of service (or 7 months) from June 30, 1973, to February 1, 1974, under the service spanning rules of 26 C.F.R. § 1.410(a)–7(a)(3)(vi). However, at oral argu-

ments, Plaintiff's counsel suggested that he does not seriously pursue this additional credit and concedes that he only pursued the 8.875 years of credit through the administrative process.

accrual credit for his years of service prior to June 30, 1973, under the terms of any version of the Plan [17] or under ERISA and that it has fully complied with ERISA and regulations promulgated thereunder at all times.

■■■ In reviewing a denial of benefits under ERISA, the court applies a *de novo* standard of review unless the benefits plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (determining the appropriate standard of review in actions brought under 29 U.S.C. § 1132(a)(1)(B)); *Yochum v. Barnett Banks, Inc. Severance Pay Plan*, 234 F.3d 541, 544 (11th Cir.2000). If the plan gives the plan administrator or fiduciary such discretionary authority, the court applies a more deferential standard of review, an arbitrary and capricious or abuse of discretion standard. *See Firestone*, 489 U.S. at 115, 109 S.Ct. 948; *Yochum*, 234 F.3d at 544. When conducting a review of a denial of ERISA benefits under the arbitrary and capricious standard, the court simply determines whether there was a reasonable basis for the decision based upon the facts as known to the administrator at the time the decision was made. *Paramore v. Delta Air Lines, Inc.*, 129

F.3d 1446, 1451 (11th Cir.1997); *Jett v. Blue Cross and Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir.1989) (citations omitted). Here, both the 1973 and 1982 Plans grant the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. *See* NCNB Plan Document 1960 at Art. X, ¶ 8 (Doc. 17, Exh. A., Vol. I); NCNB Plan Document 1980 at Art. X, § 10.3 (Doc. 17, Exh. A., Vol. I; Doc. 53, Exh. 1). Accordingly, the court will apply an arbitrary and capricious standard of review to the Appeals Committee's considerations under the Plan.[18]

### B.

■■■ The effective date of the Exchange–NCNB merger appears to have been December 31, 1982, and ERISA was in full force and effect. Under section 404(a)(1)(D) of ERISA, the Appeals Committee was obliged to discharge its duties under the Plan in accordance with the documents governing the Plan insofar as such documents were consistent with ERISA. 29 U.S.C. § 1104(a)(1)(D). In his Third Claim for Relief, Plaintiff criticizes both the methodology used by the Appeals Committee for reviewing the Plan documents, as well as its conclusion that Plaintiff was not entitled to credit for his pre-June 30, 1973, service under the Plan documents.

---

17. In regard to its decision under the Plan, Defendant urges that the Appeals Committee's consideration of the Plan was reasonable and without bias and thus must be affirmed under the applicable standard of review.

18. Plaintiff argues that a heightened arbitrary and capricious standard applies because of a conflict of interest. I find it unnecessary to explore this argument in detail. Under the Eleventh Circuit's holding in *Brown v. Blue Cross and Blue Shield of Ala., Inc.*, 898 F.2d 1556 (11th Cir.1990), even in the face of an alleged conflict, the arbitrary and capricious standard is applicable in cases such as this

one, but "the application of the standard is shaped by the circumstances of the inherent conflict of interest." *Id.* at 1563. Here, Defendant avers that the Plan is funded via a trust rather than corporate assets, and Plaintiff has not demonstrated a "substantial conflict of interest on the part of the fiduciary responsible for benefits determinations" or that the fiduciary's decision advanced a conflicting interest at his expense. *See id.* at 1566–67. At any rate, the court's conclusion that Defendant's decision was not arbitrary and capricious would stand even under a heightened standard of review.

As noted above, the Appeals Committee began by examining the 2000 Plan and then various predecessor Plans as each defined benefit service and vesting service. By its approach, the Appeals Committee worked back to the Plan as restated in 1985. It noted that under the 1988 amendment to the Plan, "Creditable Service" was used in place of "Benefit Service." Looking further to the definitions of "Continuous Employment," "Service," and "Participating Employers" under this Plan, the Appeals Committee concluded that Plaintiff was not in service with a participating employer on April 1, 1976, and accordingly, under the 1988 Plan was not entitled to service credit for employment before that date. *See* Letter from Dana Farber to William D. Mitchell (Jan. 2, 2002), Correspondence related to Hoover Appeal (Doc. 17, Exh. A, Vol. 1; Doc. 53, Exh. 2). By this approach, Defendant did not address the 1982 Plan, the plan in effect at the time of the Exchange–NCNB merger. According to the Plaintiff, the proper approach, given the contractual nature of such employee benefits plans, required the Appeals Committee to examine the earliest applicable documents first and then work forward in time. In Plaintiff's view, the 1982 Plan was the relevant plan for decision in this manner.

Beyond the matter of methodology, Plaintiff argues that under the applicable language of section 14.17 added by the 1982 amendments to the 1980 Plan, Exchange became a "Participating Employer" on the effective date of the merger, December 31, 1982. Because other provisions of the Plan counted all service with a participating employer, Plaintiff maintains that he should have been treated as if he were in service during the entire period of his employment by Exchange and in par-

ticular, on April 1, 1976, the date critical to the determination of his "Creditable Service" for employment prior to March 31, 1976.

It appears to the undersigned that the methodology generally proposed by the Plaintiff for review of a claim such as this is correct. Indeed, this was the approach used by Ms. Kaul in Defendant's initial denial of the claim, and her rationale was correct insofar as it reviewed the provisions of the Plan. However, even if the methodology of the Appeals Committee was faulty, the court's review of the pertinent provisions of the 1973 Plan and 1982 Plan reveals that the conclusion reached by the Appeals Committee appears reasonable, as it is based on similar definitions and language. As discussed below, absent a showing that the Plan is inconsistent with the requirements of ERISA, Plaintiff could not prevail on his third claim.

The applicable plans are the Plan in effect at the time of the Citizens–NCNB merger in 1973 and the plan in effect at the time of the Exchange–NCNB merger in 1982. Under the 1973 Plan,[19] Citizens employees were given credit by NCNB for their continuous, full-time service with Citizens prior to March 1973, and their benefits under the NCNB Plan were to be calculated as if the employees had been employed by NCNB on the dates they were actually employed by Citizens. *See* Letter from Bonnie J. Kaul to Herbert C.M. Hoover (June 8, 2001), Correspondence related to Hoover Initial Claim (Doc. 17, Exh. A., Vol. I; Doc 53, Exh. 4); *see also* Merger Proposal, Miscellaneous Documents (Doc. 17, Exh. A., Vol. I) ("All officers and employees [of Citizens Bank] ... would be given credit for continuous full-time employment service prior to the merger; that is, their benefits would be calculated as if they had been employed by

---

**19.** The plan in effect in 1973 was actually the 1960 NCNB Plan as thereafter restated or amended. For simplicity sake, the court will refer to this Plan as the "1973 Plan."

North Carolina National Bank on the date they were actually employed by your bank."). Under that Plan's vesting rules, "[a] participant who terminates employment with the Bank prior to the completion of 15 years of continuous employment shall not be entitled to receive any benefits under the plan" with specified exceptions inapplicable to Plaintiff. *See* NCNB Plan Document 1960 at Art. VI, ¶ (a) (Doc. 17, Exh. A, Vol. I). The term, "continuous employment," was defined as "service by an employee from the date he last entered the employment of the Bank or until the date his employment shall have been terminated for any reason" except leave of absence, vacation, or military service. *Id.* at Art. I, ¶ 12. The definition incorporated a break-in-service rule that provided: "An employee whose employment by the Bank has been otherwise severed [for reasons other than early retirement or total disability] and later resumed shall be considered a new employee as of the date of his re-engagement." *Id.* Thus, according to the 1973 Plan, Plaintiff lost credit for his 8.875 years of service prior to June 30, 1973, because he terminated his employment with NCNB prior to the fifteen-year period necessary for vesting and, like any other employee, would be considered a new employee if he ever was re-employed.

In anticipation of the Exchange–NCNB merger, the Plan, as restated in 1980 and amended in 1981, was again amended in 1982.[20] The stated purpose of the amendment was to allow for the participation in the Plan by Exchange employees and for the merger of the Exchange plan into the Plan in the event the merger was consummated. *See* NCNB Plan Document 1980 (Doc. 17, Exh. A, Vol. I; Doc. 53, Exh. 1). In pertinent part, the amendment added

Exchange as a "Prior Employer" under section 2.1(c)(33) of the Plan; made its pension plan as it existed immediately prior to the effective date of the acquisition of Exchange a "Prior Plan" under Section 2.1(c)(34) of the Plan; and added a new section, 14.17, to Article XIV of the Plan dealing with "special benefit provisions." *Id.* Under this section, matters related to the transition by Exchange employees into the Defendant's Plan were addressed. Among numerous provisions, this section stated that Exchange would become a "Participating Employer" under the Plan effective upon the closing of the Exchange acquisition, and it called for the merger of the Exchange plan into the Plan as of the later of December 31, 1982, or on the last day of the calendar month in which the Exchange acquisition occurred. *Id.* This new section also provided that an employee of Exchange on the closing date of the merger would become "a Participant in the Plan" on the later of the closing date of the merger or the date the employee turned twenty-five. *Id.*

This section also addressed the matter of "Service Credits" for Exchange employees by specially defining "Creditable Service" and "Vesting Service" for such employees. Creditable service was essentially the product of the number of years of credited service as determined under the Exchange plan times twelve. *Id.* Here, unlike the provisions of Article II of the Plan, it was not significant to the matter of creditable service whether the employee's service was before or after March 31, 1976, or whether the employee was in service on April 1, 1976. Simply stated, if Exchange credited the service, the employee was likewise credited under the Plan upon the merger.[21] *See id.*

---

**20.** The parties refer to this as the "1982 Plan." For simplicity's sake, the court will also refer to the Plan in effect in 1982, i.e., the

1980 Plan as amended in 1981 and 1982, as the "1982 Plan."

**21.** Also regarding the Exchange plan and the

Under the 1980 Plan's definitions of "Creditable Service," "Service," and "Continuous Employment," Plaintiff was not entitled to his prior service with Citizens either. The Plan defined "Service" as "employment with a Participating Employer in the Plan or a subsidiary that was a member of the NCNB controlled group of corporations." *Id.* at Art. II, § 2.1(c)(37). "Creditable Service" was defined as " 'full months of Continuous Employment through March 31, 1976,' plus 'Months of Service after March 31, 1976, whether or not consecutive.' " *Id.* at Art. II, § 2.1(c)(16). "Continuous Employment" was defined as follows:

> (15) *Continuous Employment,* with respect to a Participant who is in Service on April 1, 1976, means such Participant's period of uninterrupted employment as an Employee with a Participating Employer or a Prior Employer from the date the Participant last entered the employment of a Participating Employer or a Prior Employer through March 31, 1976; ... Continuous Employment with respect to a Participant who was not in Service on April 1, 1976 shall be disregarded for purposes of the Plan....

*Id.* at Art. II § 2.1(c)(15). Because the Plan, as amended in 1982, defined Exchange as a "Participating Employer" as of the date of "the closing of the Exchange acquisition," and, for employees such as Plaintiff, made him a "Participant" in the Plan effective on the date of the merger, a fair and reasonable reading of the Plan is

that Plaintiff was neither in "Service" nor a "Participant" as of April 1, 1976. Upon such a reading, Defendant had a reasonable basis for denying Plaintiff the 8.875 years of prior service with Citizens and NCNB through March 31, 1976.[22] While Plaintiff complains of an inconsistency between this reading and the fact that Plaintiff was given credit for his work at Exchange, that inconsistency is explained by the addition of section 14.17 to the special benefits provision of the Plan.

Even assuming *arguendo* that Plaintiff was a "Participant" in "Service" on April 1, 1976, the definition of continuous employment means the participant's "period of uninterrupted employment ... *from the date the Participant last entered the employment of a Participating Employer or a Prior Employer ....*" *Id.* (emphasis added). The date Plaintiff last entered the employment of a Participating Employer or a Prior Employer was February 1, 1974, when he entered the employment of Exchange.[23] Therefore, even in a light most favorable to Plaintiff, his "Continuous Employment" began on February 1, 1974, and his prior service with Citizens and NCNB would not count as "Creditable Service."

Accordingly, the review of the Plan by the Appeals Committee, even if faulty in its methodology, was reasonable, and the Committee's interpretation was not arbitrary and capricious. If the propriety of the Appeals Committee's decision rested exclusively on the reasonableness of its

---

merger, it is significant to the court's decision that the Exchange plan does not contemplate any credit for work performed by anyone at Citizens, nor should it, as the banks were wholly unrelated. Although merger documents may have been lost, the Appeals Committee's conclusion that it would not expect them to reveal anything related to Citizens is most reasonable.

**22.** Because the pertinent provisions of the Plans reviewed by the Appeals Committee

were substantially the same, the result is the same even if the methodology was inappropriate.

**23.** Citizens was defined as a "Prior Employer" under the 1980 Plan. NCNB Plan Document 1980 at Art. II, § 2.1(c)(33)(Y) (Doc. 17, Exh. A, Vol. I; Doc. 53, Exh. 1). However, this fact makes no difference to the court's decision.

interpretation of the Plan, Defendant would prevail on Plaintiff's Third Claim for Relief. However, the Appeals Committee was obliged to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and in accordance with the documents governing the Plan insofar as such documents are consistent with the provisions of ERISA. *See* 29 U.S.C. § 1104(a)(1)(D). Because the court determines below that the Committee's denial is inconsistent with ERISA, summary judgment in Plaintiff's favor is appropriate as to his Third Claim for Relief.

### C.

By his First and Second Claims for Relief, Plaintiff contends that Defendant's failure to grant benefit accrual credit for his prior service with Citizens and NCNB violates ERISA sections 204 and 210, 29 U.S.C. §§ 1054, 1060. Section 204 sets forth minimum benefit accrual requirements for pension plans under ERISA. Section 204(b)(4)(A) provides:

> For purposes of determining an employee's accrued benefit, the term "year of participation" means a period of service (beginning at the earliest date on which the employee is a participant in the plan and which is included in a period of service required to be taken into account under section 1052(b) of this title ...) as determined under regulations prescribed by the Secretary which provide for the calculation of such period on any reasonable and consistent basis.

29 U.S.C. § 1054(b)(4)(A).[24] Section 202(b) provides that, with some exceptions,

"all years of service with the employer or employers maintaining the plan shall be taken into account in computing the period of service...." 29 U.S.C. § 1052(b)(1). Additionally, section 210(b) provides that, for purposes of Part 2[25] of ERISA, "in any case in which the employer maintains a plan of a predecessor employer, service for such predecessor shall be treated as service for the employer." 29 U.S.C. § 1060(b)(1).[26]

Plaintiff argues that Defendant violated these benefit accrual requirements of ERISA by not crediting him for his pre-June 30, 1973, service with Citizens and NCNB because such service should be treated as service with Defendant, "all service" with Defendant should be counted for benefit accrual purposes, and no exception to the general rule exists here. In addition to the statute, Plaintiff cites to the decision in *McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 320 F.3d 151 (2d Cir.2003).

In response and by its motion for summary judgment, Defendant argues that section 204 does not override pre-ERISA break-in-service provisions such as those in the 1973 Plan, which, by its terms, precludes Plaintiff from receiving credit for his pre-June 30, 1973, service upon his re-employment with the Defendant. Defendant cites to the decision in *Jones v. UOP*, 16 F.3d 141 (7th Cir.1994). Defendant further argues that, even if the general rule of section 204(b)(4)(A) works to override a plan's break-in-service rules, the exception at section 202(b)(4)(A) precludes benefit accrual credit for his service

---

**24.** Certain exceptions within this section are inapplicable in the circumstances of this case.

**25.** Part 2 of the Act is entitled "Participation and Vesting."

**26.** In his Complaint, Plaintiff does not specify on which subpart of section 210 he bases his

claim. In his response to Defendant's motion for judgment on the pleadings, Plaintiff concedes that subpart 1060(b)(2) does not apply in the absence of regulations prescribed by the Secretary of the Treasury. *See* (Doc. 24 at 5); *see also Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1470–71 (11th Cir.1986).

prior to his break in service in 1973. This exception, the so-called rule of parity, provides:

in the case of a nonvested participant, years of service with the employer or employers maintaining the plan before any period of consecutive 1–year breaks in service shall not be required to be taken into account in computing the period of service if the number of consecutive 1–year breaks in service within such period equals or exceeds the greater of—(i) 5, or (ii) the aggregate number of years of service before such period.

29 U.S.C. § 1052(b)(4)(A). Applying an elapsed time method for determining the length of Plaintiff's prior service and his break in service, Defendant calculates that Plaintiff's prior service from August 1964 to June 1973 was no more than 107 months, and his break in service from July 1973 to December 1982 was at least 113 months. Thus, applying the rule of parity, sections 204 and 202 would not restore his prior service to his accrued benefits. Additionally, while Defendant does not dispute that it maintains a plan of a predecessor employer and is required to treat service for such predecessor as service for itself pursuant to section 210(b)(1), Defendant contends that it has complied with section 210(b)(1) by treating Plaintiff's service with Citizens as if all of his service from 1964–1973 had been with NCNB or Bank of America but properly excludable under the terms of the Plan.

To the extent that Defendant denied Plaintiff's claims for benefit accrual on the basis of the break-in-service provisions in the 1973 Plan, the court must first determine whether ERISA benefit accrual provisions override contradictory pre-ERISA break-in-service provisions within the Plan. ERISA sections 204 and 202 are silent as to the applicability of pre-ERISA break-in-service provisions to the calculation of accrued benefits arising from pre-ERISA service, and the Eleventh Circuit has not

ruled on the issue. While other courts have considered this statutory omission, there is a split among the circuits as to its significance, and the parties cite to contradictory case law supporting their respective positions, both in their claims correspondence and in their memoranda to this court.

Plaintiff relies on *McDonald v. Pension Plan of the NYSA–ILA Pension Trust Fund*, 153 F.Supp.2d 268 (S.D.N.Y.2001), *aff'd*, 320 F.3d 151 (2d Cir.2003), which holds that ERISA sections 204(b) and 202(b) trump a plan's break-in-service provisions that limit the accrual of benefits arising from pre-ERISA employment. In that case, the district court found that the plan administrators improperly used the plan's pre-ERISA break-in-service provision to disregard years of service rendered prior to a break in service and to limit the plaintiff's accrued benefits. *McDonald*, 153 F.Supp.2d at 281. The court held that accrued benefits and vested benefits are treated differently with respect to breaks in service; while section 203(b) explicitly allows the application of pre-ERISA break-in-service provisions to the calculation of vested benefits arising from pre-ERISA service, there is no such provision in section 204 with respect to accrued benefits. *Id.* Therefore, under sections 204(b) and 202(b), pre-ERISA break-in-service provisions do not apply when calculating accrued benefits, and, with certain exceptions, all years of service with an employer are taken into account. *Id.* The court reasoned that, had Congress intended for pre-ERISA break-in-service provisions to apply when calculating accrued benefits, it would have done so expressly by including a provision to that effect in section 202(b) paralleling section 203(b)(1). *Id.*

The Second Circuit affirmed this aspect of the district court's holding and reason-

ing [27] in *McDonald* and expressly declined to follow the contrary interpretation of ERISA section 204(b) by the Seventh, Third, and Eighth Circuits. *See McDonald,* 320 F.3d at 156–59. To date, no other courts have followed the Second Circuit's decision, nor have any other courts cited to the district court's decision for this proposition.

Defendant relies on *Jones,* which declined to hold that ERISA section 204(b)(1)(D) was intended to override a pre-ERISA plan's break-in-service provisions. In *Jones,* the Seventh Circuit found that, as a matter of "contract interpretation," Plaintiff was not entitled to credit for service prior to a break in service, where the pre-ERISA provisions of the plan defined "service" as "an Employee's last continuous period of employment with the Employer." *Jones,* 16 F.3d at 142–43. Considering the provisions of sections 203 and 204 in tandem, the court declined to conclude from the presence of an express provision permitting application of pre-ERISA break-in-service rules to vesting at section 203(b)(1)(F) and the absence of any similar reference to breaks in service in section 204(b)(1)(D) addressing accrual of benefits, that Congress intended to override such provisions. Citing to Jeffrey D. Mamorsky, Employee Benefits Handbook § 18.16 (3d ed.1992), the court reasoned that section 204 was intended to prevent a plan from backloading of benefits to thereby defeat the vesting provisions of section 203.[28] In the Seventh Circuit's view, "it

would be perilous to assume from the absence of an express reference to breaks in service that section 204(b)(1)(D) was intended to override them," since the provision was intended to deal with the distinct problem of backloading. *Id.* at 143–44. Thus, the court concluded that the pre-ERISA break-in-service provision at issue in the case was valid. Two other circuits have reached the same conclusion, but without analysis. *See Redmond v. Burlington N. R.R. Co. Pension Plan,* 821 F.2d 461 (8th Cir.1987); *Jameson v. Bethlehem Steel Corp.,* 634 F.Supp. 688 (E.D.Pa.1986), *aff'd without opinion,* 802 F.2d 447 (3d Cir.1986); *see also Haas & Cass v. Boeing,* Civ. A. No. 90–7414, 1992 WL 221335 (E.D.Pa. Sept. 4, 1992); and *Dorn v. Int'l Paper Co.,* Civil Action No. 01–1196 (W.D.La. Nov. 6, 2002) (Doc. 52, Exh. B); *Tanzillo v. Local Union 617, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.,* 769 F.2d 140 (3d Cir.1985).

 Upon review of the statutory language and this limited authority, the court finds the Second Circuit's decision in *McDonald* more faithful to the canons of statutory construction and thus more persuasive in this case. A fundamental canon of statutory construction is that the court must begin with the language of the statute. *See Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002); *Harris v. Garner,* 216 F.3d 970, 972 (11th Cir.2000). The court must determine whether the language at issue has "plain and unambiguous meaning" [29] and whether the "statutory scheme

---

**27.** The district court also based its decision on agency regulations and opinion letters. *See McDonald,* 153 F.Supp.2d at 281–86. The Second Circuit declined to consider such secondary sources because it found Congressional intent evident and unambiguous in the text of the Act itself. *See McDonald,* 320 F.3d at 159.

**28.** According to Mamorskey, backloading occurs when benefits accrue very slowly until the employee is near retirement age so that

the employee's pension rights, even though vested, have very little value until he has completed a much longer period of service. *Jones,* 16 F.3d at 143 (discussing Mamorsky, *supra* ).

**29.** This court here recognizes that it is perilous (to borrow the Seventh Circuit's word choice) to ever describe the language in this Act as "unambiguous," but on its face these provisions are straightforward and indicate

is coherent and consistent." *Barnhart,* 534 U.S. at 450, 122 S.Ct. 941. "When the import of words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language." *Jackson v. State Bd. of Pardons and Paroles,* 331 F.3d 790, 794 (11th Cir.2003) (quoting *CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1222 (11th Cir.2001)). When the statutory language is ambiguous or leads to absurd results, the court may consult the legislative history to discern the true intent of Congress, but only as an exception to the plain meaning rule. *United States v. McNab,* 331 F.3d 1228, 1236 (11th Cir.2003).

▪ Here, the court finds that the language of ERISA sections 204(b)(4)(A),[30] 202(b)(1), and 210(b)(1) is plain and unambiguous—an employer maintaining the plan of a predecessor employer must take into account all service with a predecessor employer when determining an employee's accrued benefit (without regard to whether the plan in question provides for break-in-service exclusions), subject to the specific, enumerated exceptions. While such a reading may result in the disparate treatment of service credit for vesting and accrued benefits purposes in light of ERISA section 203(b)(1)(F), the overall statutory scheme of ERISA is nonetheless coherent and consistent and does not lead to absurd results. On the contrary, as the *McDonald* court noted, "had Congress intended to permit pre-ERISA break-in-service provisions to apply when calculating accrued benefits, it could have done so." *McDonald,* 320 F.3d at 159 (citing ERISA section 203(b)(1)(F), 29 U.S.C. § 1053(b)(1)(F)). "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (quoting *Chicago v. Envtl. Defense Fund,* 511 U.S. 328, 338, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994)); *see also United States v. Jordan,* 915 F.2d 622, 628 (11th Cir.1990) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.") (quoting *Rodriguez v. United States,* 480 U.S. 522, 525, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (per curiam)). Thus, under the canons of statutory construction, the court finds it inappropriate to look to the legislative history to interpret section 204 in manner contrary to its plain meaning or to infer that Congress intended to incorporate the language of section 203(b)(1)(F) into section 204 despite its clear omission from section 204.[31]

Accordingly, ERISA sections 204(b) and 202(b) trump the break-in-service provisions in the Plan with respect to benefit accrual, either before or after ERISA's effective date of January 1, 1976, to the extent that they are inconsistent with these provisions or the exceptions thereunder. Therefore, Defendant is required to

---

that Congress intended to treat benefit service and vesting service differently. As the Second Circuit noted, "ERISA is a complicated enough statute without the court's soldering new sections onto it . . . ." *McDonald,* 320 F.3d at 159.

**30.** Interestingly, the Seventh Circuit did not address the import of this provision.

**31.** As discussed herein, such conclusion is consistent with the plain language of section 210. It is worthy of further note that the different treatment of service for vesting purposes and for accrual purposes is also consistent with how the Defendant dealt with such matters under the Plan.

credit Plaintiff with all service with Citizens, Exchange, NCNB, and Bank of America in computing Plaintiff's accrued benefit credit, regardless of any break-in-service provisions designed to eliminate such service from consideration, unless one of the exceptions of ERISA section 204(b) or 202(b) apply to exclude any of that service.

■ Defendant argues that the rule of parity, 29 U.S.C. § 1052(b)(4)(A), permits it to disregard Plaintiff's service prior to June 30, 1973. By Defendant's calculation, Plaintiff's period of service prior to his break in service was 8 years and 10½ months, from August 13, 1964 (the date Plaintiff became a participant in the Citizens Plan) to June 30, 1973 (the date Plaintiff terminated his employment with NCNB), and his break in service was 9 years and 6 months, from June 30, 1973, to December 31, 1982 (the date Plaintiff resumed his employment with NCNB, when NCNB merged with Exchange). Stated otherwise, by Defendant's calculation, his period of service prior to his break in service was no more than 107 months, and his break in service (or period of severance) was at least 113 months.[32] Since his period of severance exceeds his prior service, the exception to section 202(b)(1) under subsection (b)(4) applies, and Defendant was not required to count all service with NCNB.

Plaintiff argues that the rule of parity exception does not apply to his circumstances because he was a vested participant and because the Plan in effect when he was re-employed by Defendant did not contain this exclusion. He further argues that because he was entitled to receive service credit for his service with Exchange, no five-year (or longer) break in service occurred. Plaintiff does not dispute the Defendant's calculation of his prior service from August 1965 to June 1973, except that he calculates his service in terms of 8.875 years, *see* (Doc. 71 at 2–3), which is the equivalent of Defendant's calculation of 8 years and 10½ months. Plaintiff calculates his period of severance as .58 years (or 7 months), from June 30, 1973 (the date Plaintiff terminated his employment with NCNB), to February 1, 1974 (the date Plaintiff became employed by Exchange).

Under the elapsed time method for calculating accrued benefits, a period of severance ends "when an employee returns to service with the employer or employers maintaining the plan." *Id.* at § 1.410(a)–7(a)(3)(v). On its face, such language would appear to support the Defendant's argument that the Plaintiff's period of severance from his employment with Defendant did not actually end in February 1974, at the time he became employed by Exchange, but instead ended in December 1982 with Exchange's merger with NCNB. But for the peculiar circumstances of the Plaintiff's case and the express provision

---

**32.** The parties agree that the elapsed time method is an appropriate method for calculation of benefits in this instance. Treasury regulation section 1.410(a)–7 allows for the elapsed time method of crediting service as an alternative to the general method of counting of hours of service during the applicable 12–consecutive–month computation period under 29 C.F.R. § 2530.200b–2 and equivalencies under 29 C.F.R. § 2530.200b–3. *See* 26 C.F.R. § 1.410(a)–7(a)(1). Under this method, "period of service" is used rather than "year of service" in determining service to be taken into account for purposes of benefit accrual. *Id.* at § 1.410(a)–7(a)(3)(iv). A "period of severance" is the period between the date of severance from service and the date when an employee returns to service with the employer maintaining the plan and is used to apply the statutory break in service rules. *Id.* at § 1.410(a)–7(a)(3)(v).

at section 210 governing service under predecessor plans, Defendant would prevail under the rule of parity. However, for purposes of calculating accrued benefits under ERISA and under the peculiar circumstances of this case, it is appropriate to regard February 1, 1974, as the end of his period of severance. Section 210 mandates the treatment of Plaintiff's service with Exchange, a predecessor employer whose plan merged with that of the Defendant, as service with Bank of America. In other words, this section requires Defendant to treat Plaintiff as an employee from Bank of America from 1964 to 1973 and from 1974 to the present. Given the circumstances presented and the clear directive of section 210, it would be entirely incongruous to include Plaintiff's service with Exchange from 1974 to 1982 in the period of severance, and the court declines to do so.

Because Plaintiff's .58–year break in service from June 30, 1973, to February 1, 1974, does not equal or exceed his 8.875 years of prior service from August 13, 1964, to June 30, 1973, the rule of parity exception to 202(b)(1) does not apply to exclude the 8.875 years of prior service for benefit accrual purposes.[33]

Accordingly, the court concludes that Plaintiff is entitled to additional accrued benefit credit as a matter of law, and Plaintiff is entitled to summary judgment on his First and Second Claims for Relief.

V.

For the foregoing reasons, it is recommended that the court GRANT Defendant Bank of America's Motion for Summary Judgment, with Memorandum (Doc. 52) with respect to Plaintiff's Fourth Claim for Relief, GRANT Plaintiff's Motion for Summary Judgment (Doc. 53) with respect to Plaintiff's First, Second, and Third Claims for Relief, and DENY both motions in all other respects.

It is further recommended that the court DENY as moot Plaintiff's Motion for Judgment on the Pleadings or Alternatively Summary Judgment (Doc. 11), Defendant Bank of America's Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment and Memorandum on Dispositive Motions (Doc. 17), and the duplicate submission of Plaintiff's Motion for Summary Judgment (Doc. 54).

Finally, it is recommended that the case be remanded for further administrative proceedings consistent with this Report and Recommendation.

---

33. Plaintiff also argues that the rule of parity does not apply because the 1982 Plan does not contain such a rule for benefit accruals and because Plaintiff is now 100% vested. Plaintiff does not, however, cite to any authority to support his position that the rule of parity, which is set forth expressly in ERISA's exceptions, would not apply in the absence of such a provision within the plan applicable at the time of his re-employment with NCNB.

See *First Midwest Bancorp, Inc. v. Hickey*, No. 93 C 6784, 1994 WL 532187, at *3 (N.D.Ill. Sept. 26, 1994) (finding that employee was not entitled to credit for service prior to a break in service under the rule of parity, where the plan did not incorporate the use of the rule of parity into any calculation). Secondly, Plaintiff has never satisfactorily demonstrated that he was vested at the time in question, although clearly he is now vested.